STEVEN A. ROCHIN AND KAREN J. ROCHIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rochin v. Commissioner
Docket No. 26316-89
United States Tax Court
T.C. Memo 1992-262; 1992 Tax Ct. Memo LEXIS 284; 63 T.C.M. (CCH) 2933; May 7, 1992, Filed *284 Decision will be entered for respondent with respect to the deficiencies and additions to tax under section 6659. Michael A. Whelan and Linda J. LeZotte, for petitioners. Christopher J. Croudace, for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Addition to Tax [1]
Year
Deficiency
Sec. 6659
1983
$ 15,086
$ 4,525.80
1984
3,682
1,104.60
The issues for decision are: (1) Whether the value of a computer donated to a charitable organization in 1983 should be limited to $ 800 for purposes of determining the amount of petitioners' charitable contribution deduction; [1] (2) whether petitioners are liable for the additions to tax for valuation overstatement pursuant to section 6659 [2] for the taxable years 1983 and 1984; and (3) whether *285 petitioners are liable for increased interest under the provisions of section 6621(c) for the taxable years 1983 and 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in San Jose, California, at the time they filed their petition in this case. Steven A. Rochin (hereinafter referred to as petitioner) has been employed with Tandem Computers (Tandem) since March 1980. His positions with Tandem have included engineering lab technician, in-house customer engineer, and support specialist in the product support and introduction *286 group. Tandem allowed its employees to retrieve scrapped parts for their own use. Petitioner began acquiring scrapped and obsolete parts from Tandem in September 1981. Most of these parts were defective when petitioner acquired them. Petitioner attempted to repair these defects. Using these parts, petitioner assembled a computer (the computer) into a configuration resembling a "Tandem 246" mainframe system. Petitioner also acquired a Guardian Operating System from a disc drive that he obtained as a scrap part. Petitioner incurred the following out-of-pocket expenses constructing the computer: Scrap purchase
$ 100
Parts and material
200
Power and utilities
300
Mileage
200
Total
$ 800
Petitioner repaired, assembled, and tested the computer components in his garage. Petitioner ran low-level diagnostics on the components of the computer and later performed high-level diagnostics, consisting of system exercises described as a "break-in" or "burn-in". The purpose of high-level diagnostics is to stress-test the system components. The longest single period during which petitioner ever ran the computer was 3 to 4 hours. Petitioner spent the following amounts of time *287 repairing, cleaning, testing, and assembling the scrapped parts: 1981
91 hours
1982
297 hours
1983
212 hours
Total
600 hours
Petitioners donated the computer to the World Apostolic Cathedral, Inc. (the church), in late December 1983. The church is a qualified organization for purposes of section 170(c). Petitioners were never members of the church. On their 1983 return, petitioners reported a $ 53,400 charitable contribution for donating the computer. At the time of the donation, petitioner was not aware of any companies, other than scrap yards, that were purchasing "reconditioned" computers. Petitioner ascertained that the list price for a new Tandem 246 was $ 89,000. Petitioner then discounted the list price by 40 percent to arrive at the value reported on the 1983 return. The 40-percent discount was based on the advice of petitioner's tax return preparer, who told him that a 40-percent discount was standard for "used equipment". Due to statutory adjusted gross income limitations, petitioners carried over $ 11,968 of the unused contribution to their 1984 income tax return. In the notice of deficiency, respondent determined that petitioners were limited to *288 a 1983 charitable contribution deduction for the computer in an amount equal to their basis of $ 800. Respondent's determination eliminated the entire contribution carryover deduction that petitioners claimed on their 1984 return. Tandem Computers manufactures and sells mainframe computers. Prior to sale and delivery to customers, Tandem tests its mainframe computers and their components. Tests for mainframe computers manufactured by Tandem involve from 4 to 16 hours of low-level diagnostic testing on individual components. Once Tandem completes its component testing, it runs system diagnostics for a "burn-in period" of 48 to 72 continuous hours. Tandem tests the computer systems for 48 to 72 continuous hours because the product components have a tendency to fail early on in their lives if any manufacturing defects are present. Tandem employees inspect the computers every 8 to 12 hours during the "burn-in period". If there are any failures during the "burn-in period", defective components are replaced and the system retested for another 48 hours. Customers using Tandem mainframe computers include the New York Stock Exchange, banks, trucking companies, telephone companies, *289 power companies, and other sophisticated customers. Tandem mainframe computers are designed to run on a continuous basis. Reliability is one of Tandem's strongest selling points. The reliability of a Tandem system would have been significantly lower without Tandem's testing procedures because components tended to fail during the 48- to 72-hour testing period. The computer donated by petitioners was delivered to the church disassembled. Some of the components of the computer that were delivered to the church were visibly labeled as "scrap". It took 4 months to complete the process of assembly, low-level diagnostics, and loading the Guardian Operating System. The church kept the computer in a 10- by 13-foot room, with an air-conditioning system. Derek Baity was a member of the church and the person at the church responsible for operating the computer. Mr. Baity had a bachelor of science degree in electrical engineering. He was employed as a computer systems manager for ABB Systems Control, had experience working with mainframe computers, and was capable of programming the computer. When Mr. Baity and petitioner ran tests on the computer, they encountered communication problems *290 with the system disc drive. After approximately 4 months, Mr. Baity was able to load the Guardian Operating System onto the computer. However, he was never able to run the computer for more than 30 to 45 minutes before encountering operating problems. Various church members and petitioner attempted to get the computer into an operational status where it could run the programs for which a Tandem 246 was designed. These attempts were unsuccessful. A simple Fortran routine was the only mathematical or wordprocessing-type function the computer ever performed for the church. The church kept the computer for approximately 12 to 18 months. The church eventually disposed of the computer by hauling it to a dump. OPINION Section 170(a) allows a deduction for charitable contributions made during a taxable year. Section 1.170A-1(c)(1), Income Tax Regs., provides that if a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under *291 any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. Petitioners have the burden of proving that the fair market value of the donated property is greater than that determined in the notice of deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Anselmo v. Commissioner, 80 T.C. 872 (1983), affd. 757 F.2d 1208 (11th Cir. 1985). There is no evidence that there was an active market in December 1982 for a computer resembling a "Tandem 246" that was constructed exclusively from scrapped or obsolete parts. In lieu of such information, petitioner valued the donated computer by using the list price for a new "Tandem 246" and, on the advice of his return preparer, discounting it by 40 percent. We find this method of valuation to be totally unsupported. Petitioners presented the testimony of two witnesses to support the amount which they claimed represented the value of the computer. Neither of these witnesses was consulted prior to the time petitioners filed their 1983 and 1984 returns. One of these witnesses had no experience valuing computers *292 and the other had very limited experience related to computer sales and purchases. Neither of the witnesses ever saw or examined the computer which was donated to the church. The testimony of both witnesses was based on the "assumption" that petitioner's computer was the equivalent of a used, operable "Tandem 246". Such an assumption was clearly unwarranted by the facts. Petitioners have failed to prove that respondent erred in her determination that the value of the computer was $ 800. The next issue for decision is whether petitioners are liable for the additions to tax for valuation overstatements of property under section 6659 for the taxable years 1983 and 1984. Section 6659 imposes an addition to tax on individuals whose underpayment of tax equals or exceeds $ 1,000 and is attributable to a valuation overstatement. Sec. 6659(d). A valuation overstatement exists if "the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." Sec. 6659(c)(1). The addition to tax is based on an applicable percentage of the underpayment *293 which is attributable to the valuation overstatement. The applicable percentage increases as the percentage difference between the correct value and the value claimed increases. For cases in which the valuation claimed is more than 250 percent of the correct value, the applicable percentage is 30 percent. Sec. 6659(b). In the instant case, petitioners valued the computer at $ 53,400. We have upheld respondent's determination that the correct value is $ 800. Under these circumstances, the section 6659 additions to tax apply, and the applicable percentage is 30 percent. The final issue for decision is whether petitioners are liable for the increased rate of interest under section 6621(c). Section 6621(c) provides that, with respect to interest payable under section 6601, an increased rate of interest is imposed when there is a substantial underpayment "attributable to 1 or more tax motivated transactions". A "tax motivated transaction" includes "any valuation overstatement" within the meaning of section 6659(c). Sec. 6621(c)(3)(A)(i). A valuation overstatement is present if the value of any property claimed on a return is 150 percent or more of the amount determined to be *294 the correct value of such property. Respondent first raised this issue in her amendment to answer and she thus bears the burden of proving this was a tax-motivated transaction. Rule 142(a). Specifically, respondent bears the burden of proving that the value claimed by petitioners was a valuation overstatement within the meaning of section 6659(c). Our conclusion that petitioners have failed to prove that respondent's valuation of the computer was incorrect does not satisfy respondent's burden of proof. See Kovacevich v. Commissioner, T.C. Memo. 1986-513, affd. without published opinion 843 F.2d 501 (9th Cir. 1988). Respondent has failed to prove that a valuation overstatement exists. Accordingly, we hold for petitioners on this issue. Decision will be entered for respondent with respect to the deficiencies and additions to tax under section 6659. Footnotes
1. Respondent, by amended answer, also raised the applicability of the 120-percent interest provisions of sec. 6621(c) for 1983 and 1984.↩
1. Petitioners claimed a carryover deduction on their 1984 return for the unused portion of the charitable contribution which they reported on their 1983 return. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩